IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 16, 2005

## STATE OF TENNESSEE v. JAMES D. BLACK

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S47,058    Phyllis H. Miller, Judge**

───────────

**No. E2004-02449-CCA-R3-CD - Filed November 2, 2005**

───────────

Following a jury trial, Defendant, James D. Black, was found guilty of aggravated perjury, a Class D felony. The trial court sentenced Defendant as a Range I, standard offender, to two years, all suspended but sixty days, and placed Defendant on supervised probation for four years. Defendant challenges the sufficiency of the convicting evidence. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ROBERT W. WEDEMEYER, JJ., joined.

Stephen M. Wallace, District Public Defender; and Richard A. Tate, Assistant Public Defender, Blountville, Tennessee, for the appellant, James D. Black.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General, and Robert H. Montgomery, Jr., Assistant District Attorney General, for the appellee, the State of Tennessee.

### OPINION

**I. Background**

Nora Farley, the manager of personnel services for Service Transport, Inc., testified that Defendant was employed by the company as a truck driver in 1999. Ms. Farley said that Defendant filed an "application for group disability benefits" on December 1, 1999, stating that he had hurt his back "getting out of bed." The application contained a physician's statement from Dr. John B. McLaughlin. Dr. McLaughlin stated that an MRI revealed central disc protrusions in Defendant's spine and recommended further treatment by Dr. McDonald Burkhart, an orthopedist. Dr. McLaughlin indicated on the form that Defendant's injury was not work-related.

Ms. Farley said that Service Transport switched disability insurance providers about the time of Defendant's injury. Defendant's initial injury report was filed with BMA, the company's new provider. Defendant, however, was required to file a second injury report with the company's former disability insurance provider, Guarantee Life Insurance Company, because the injury occurred prior to the change in insurance providers. Defendant filed the second application for short-term disability benefits on January 7, 2000. In this application, Defendant stated that his lower back hurt because of an accident, and Defendant also stated on the application that he did not plan to apply for workers' compensation benefits.

Ms. Farley said that Defendant applied for long-term disability benefits on May 23, 2000 after his short-term disability insurance coverage expired. On this form, Defendant said that he had hurt his back while lifting a pallet. Ms. Farley said the insurance provider questioned the claim because of Defendant's explanation for his injury. Ms. Farley told the company that Defendant had not received workers' compensation benefits as a result of his injury, and Defendant's claim for long-term disability insurance benefits was approved.

Ms. Farley testified that Defendant telephoned her in the fall of 2000. He asked her if the company had a copy of an accident report he had previously filed concerning a work-related injury he sustained in September 1999, in Indianapolis. Ms. Farley told him that she did not have a copy of the report.

Ken Hounshell, the manager of the company's terminal in Kingsport, said that in the fall of 1999, Defendant told him he had injured his back  Mr. Hounshell said that he asked Defendant on three different occasions whether or not the back injury was work-related, and Defendant always said that it was not. Mr. Hounshell reported the injury to Ms. Farley, and he told her that Defendant's injury was not work-related.

Mr. Hounshell said that Defendant called him a few months later and said that he had been injured in Indianapolis in 1999. Defendant asked for a copy of the accident report. Mr. Hounshell told Defendant that he did not know anything about the injury. Mr. Hounshell searched his records for a copy of the accident report but did not find it.

Mr. Hounshell said that the company sent its inter-company mail via the tractor-trailers that traveled between the various terminals. Inter-company mail was placed each day in a basket in the dispatcher's office, and placed on the appropriate truck at night. Any employee had access to the mail basket, and the truck drivers came through the dispatcher's office during the night when Mr. Hounshell was not at work.

Charlie Howard, an employee of Service Transport, testified that he noticed in the fall of 1999 that Defendant was not driving his truck. Mr. Howard's supervisor told him that Defendant had injured his back. Mr. Howard said that he did not help Defendant fill out an accident report, and he never discussed Defendant's back injury with him. Mr. Howard said that he had never mailed

anything through the inter-company mail system. Mr. Howard denied that he went through Defendant's personal effects which Defendant kept in his truck.

Larry Presnell, a driver for Service Transport, said that he and Defendant were on friendly terms and often ate together while they were on the road. Mr. Presnell said that Defendant never discussed his back injury with him. Mr. Presnell said that he did not know how to fill out the form used to report a work-related injury. Mr. Presnell said that he did not take any of Defendant's personal effects from Defendant's truck after Defendant was injured. Mr. Presnell stated that he did not unload his truck when he reached a particular terminal.

Dr. McLaughlin testified that he first saw Defendant on November 1, 1999. Defendant complained of pain in his lower back and right leg. Dr. McLaughlin said that Defendant told him that he did not know how he hurt his back, and Defendant never said that his injury was work-related. Dr. McLaughlin said that he would not have begun treatment if the injury was work-related because of the notification procedures required for a workers' compensation claim.

On cross-examination, Dr. McLaughlin said that his fees were covered by Defendant's medical insurance provider. He said that Defendant's lower back pain could have been caused by lifting or moving a heavy object. Dr. McLaughlin referred Defendant to Dr. Burkhart for further treatment.

Dr. Burkhart testified that he first saw Defendant on December 15, 1999. In June 2000, he performed a lumbar lamenectomy for a ruptured disk in Defendant's lower back. Defendant never told Dr. Burkhart that the injury was work-related. Dr. Burkhart said that he would not treat a patient for a work-related injury until he had been pre-approved by the insurance provider covering the workers' compensation claim.

Defendant filed a "Complaint for Workers' Compensation" against Service Transport on December 1, 2000 in Sullivan County. In the complaint, Defendant stated that he injured his back on October 7, 1999, while lifting a pallet at work.

Cesar Gracia testified that he was working in the TBI's workers' compensation fraud unit in 2000. An integral part of his investigation was determining whether or not the claimant's employer had received notice of the injury as required by statute. Mr. Gracia said that Defendant gave a deposition on April 12, 2001, in connection with his civil lawsuit filed against Service Transport, Inc.

The State introduced stipulations agreed upon by Defendant which were read to the jury. Defendant stipulated that he gave a deposition in connection with his civil lawsuit on April 12, 2001, that he was placed under oath by a court reporter prior to answering questions, and that the court reporter was authorized by law to administer oaths.

Mr. Gracia read portions of Defendant's deposition into evidence. Defendant testified in his deposition that he injured his back when he attempted to move a loaded pallet in a truck terminal in Indianapolis on October 7, 1999. Defendant said that he called his dispatcher in Nashville and asked him what he should do. The dispatcher told Defendant to fill out an accident report. Defendant said that Mr. Howard gave him an accident report form when he returned to Kingsport. Defendant completed the form, and Mr. Howard mailed the form through the inter-company mail system. Defendant said that he kept a copy of the accident report in his truck. Defendant stated that his copy of the accident report, however, was not in his truck when he returned to the terminal to collect his personal effects. Defendant said he asked Ms. Farley and Mr. Hounshell to provide him with another copy of the accident report, but a copy was not located.

Defendant further testified that he contacted Ms. Farley and Mr. Hounshell about the missing accident report after his short term disability insurance coverage expired. Defendant said that he told the truth about how he injured his back on his application for long-term disability coverage. He was on medication, however, when he filled out the short term disability insurance form, and Defendant could not remember what he said on the form. Defendant said he told Dr. McLaughlin that he injured his back at work, but that he was not going to file a claim for workers' compensation because he had short term disability insurance.

Also in the deposition, Defendant said that he continued to have medical insurance coverage through Service Transport's company insurance policy while he was on disability, but his insurance premiums increased about $400.00 a month after he had been on disability for six months. Defendant said he could not pay the premiums. Defendant stated that he had always considered filing a claim for workers' compensation benefits, but he did not file a claim immediately because he thought he would soon be back at work.

Defendant did not testify or offer proof at trial.

## II. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support his conviction of aggravated perjury. In examining whether the evidence is sufficient to support Defendant's conviction of aggravated perjury, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence

are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

The offense of aggravated perjury is committed by a person who makes a false statement, under oath, during or in connection with an official proceeding, and the false statement is material. *See* Tenn. Code Ann. §§ 39-16-702, -703. Tennessee Code Annotated section 39-16-701 provides that:

(1)     "Material" means the statement, irrespective of its admissibility under the rules of evidence, could have affected the course or outcome of the official proceeding;

(2)     "Oath" means a solemn and formal undertaking to tell the truth and includes an equivalent affirmation permitted by law as a substitute for an oath administered by a person authorized by law to take statements under oath;

(3)     "Official proceeding" means any type of administrative, executive, judicial, or legislative proceeding that is conducted before a public servant authorized by law to take statements under oath in that proceeding; and

(4)     "Statement" means any representation of fact.

The presentment charged Defendant with:

unlawfully, feloniously, knowingly, and with the intent to deceive, mak[ing] false statements under oath during and in connection with an official proceeding, to-wit: a worker's [sic] compensation lawsuit, styled James D. Black vs. Service Transport Inc., filed in the Law Court for Sullivan County, Tennessee at Kingsport, Civil Action, Number C33875(L), said statements being material to the issue of worker's [sic] compensation owed by Service Transport, Inc., to the said James D. Black for work related injury received to his back and said statements specifically related that the said James D. Black had reported his injury to his work supervisor and reported said work-related injury to his treating chiropractor, Dr. John D. McLaughlin, when in truth in fact, as he well knew, such statements were false. . . .

The State elected to rely on Defendant's statement that he reported a work-related injury to his supervisor to support Defendant's conviction for aggravated perjury.

Defendant does not dispute that he testified during his deposition that he told his supervisor, Mr. Hounshell, that he had sustained a work-related injury on October 7, 1999, and that he filled out an accident report concerning the injury. Defendant also stipulated that he was under oath when he

made the statement. In his appeal, Defendant essentially challenges the jury's assessment of the credibility of the witnesses.

Defendant argues that the jury should have found credible his testimony that his back injury was work-related, and that he reported the work-related injury to Mr. Hounshell. The jury, by its verdict, however, obviously accredited the testimony of the State's witnesses. Mr. Hounshell testified that Defendant told him in the fall of 1999 that he had injured his back, but Defendant said the injury did not occur while he was working. Mr. Hounshell filed Defendant's injury report with Ms. Farley and told her that Defendant said that he was not injured while on the job. Mr. Hounshell testified that he did not know anything about a work-related injury which Defendant claimed occurred on October 7, 1999 in Indianapolis. Mr. Hounshell said that he did not see an accident report in connection with this injury and could not locate a report for the injury in his files. Ms. Farley, Dr. Burkhart and Dr. McGlaughlin testified that Defendant said that his back injury was not related to his employment. Mr. Howard testified that he did not help Defendant fill out an accident report for the injury which Defendant said occurred on October 7, 1999, and Mr. Howard denied that he mailed an accident report for Defendant through the inter-company mail system.

Tennessee Code Annotated section 50-6-201(a) requires an injured employee to provide his or her employer with notice of a work-related injury within thirty days of the injury if the employer does not have actual notice of the injury. The statute further provides that "no compensation shall be payable under the provisions of this chapter unless such written notice is given the employer within thirty (30) days after the occurrence of the accident, unless reasonable excuse for failure to give such notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented." *Id*.

Defendant testified under oath during his deposition that he timely provided his employer notice that he injured his back while lifting a pallet. Based on the evidence presented at trial, a reasonable jury could conclude beyond a reasonable doubt that Defendant made a false statement under oath during an official proceeding, and the false statement was material to his claim for workers' compensation benefits. Defendant is not entitled to relief on this issue.

**CONCLUSION**

After a thorough review of the record, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE